IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ANN WARMAN; RANDY WARMAN; J. VARNIE BARKER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:13-cv-1443 Judge Campbell / Knowles |
| U DRIVE, LLC; JACQUES MATHIEU; DERRICK JOHNSON; DIGITAL FEDERAL CREDIT UNION, | ) ) ) ) | Jury Demand |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This action involves a claim that Plaintiffs were the victims of a fraudulent scheme at the hands of Defendants. Docket No. 1. Plaintiffs' theory is somewhat complicated, but it can be summarized as follows. Plaintiffs contend that they needed a business loan for the publication of a book series on home ownership. *Id.* Plaintiffs located Defendant Johnson through an ad on Craigslist and sent him certain documents at his request, including a Power of Attorney. *Id.* Defendant Johnson subsequently recommended using Defendant Mathieu, owner of Defendant U Drive, LLC, to obtain an automobile loan which they could convert into a business/personal loan. *Id.* Plaintiffs allege that Defendant Johnson falsified a Loan Application and Bill of Sale, which he then submitted to Defendant Digital Federal Credit Union ("DCU") for the funding of a $25,000 automobile loan. *Id.* Plaintiffs aver that they informed DCU that there "were issues concerning the loan," and requested that DCU not issue funding. *Id.* DCU, however, sent a check to Defendant U Drive, payable to both Plaintiff Ann Warman and Defendant Mathieu. *Id.*

Defendants Johnson and Mathieu then cashed the check. *Id.* Even though Plaintiff Warman never received a vehicle, DCU attempted to collect on the loan. *Id.* Plaintiff Warman has been paying the debt "in order to keep her good credit rating." *Id.*

This matter is before the Court upon a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by DCU. Docket No. 18. Defendant has contemporaneously filed a supporting Memorandum of Law. Docket No. 19. As grounds for its Motion, Defendant argues that Plaintiffs' Verified Complaint fails to state a claim against it upon which relief can be granted. *Id.* Defendant also argues that Plaintiffs Randy Warman and J. Varnie Barker lack standing to pursue any claims because they have not alleged an injury-in-fact. *Id.* Defendant further argues that Plaintiffs have failed to state their Civil Conspiracy and Civil RICO claims with the requisite particularity and have failed to allege facts sufficient to recover under either theory. *Id.*

Plaintiffs have filed a Response to the instant Motion, generally arguing that Defendant's Motion should not be granted because Defendant "is not innocent of the allegations." Docket No. 26. Plaintiffs also "assure the Court, that they are willing, able, and ready to Amend their Complaint, should the Court be inclined to agree that Plaintiffs have failed to state a claim for relief." *Id.* at 9-10. With regard to Defendant's contention that Plaintiffs Randy Warman and J. Varnie Barker lack standing because they have not alleged an injury-in-fact, Plaintiffs respond that, because Randy Warman is the husband of Ann Warman, "the injury to Randy Warman is the same as it is to Ann Warman" because "[w]hat one Warman has to pay for, the other Warman is also paying for."[1] *Id.*, p. 10. As to their Civil Conspiracy claim, Plaintiffs respond that this

---

[1] Plaintiffs do not address how J. Varnie Barker has alleged an injury-in-fact, beyond saying "the fraud affects all three Plaintiffs." *Id.*

claim should not be dismissed because:

> someone at DCU ignored that Plaintiffs Ann and Randy Warman had contacted them about the scam, and they were ignored. DCU apparently did nothing to verify the loan application, mailed a check to an address that was not the address of the used car lot, and did nothing to ensure that the signature was that of Ann Warman on the check, after prior warning that there was a scam.

*Id.*, p. 14.

Regarding their Civil RICO claim, Plaintiffs respond that this claim should not be dismissed because "DCU has a pattern and practice of adding forced placed insurance on an automobile, that Plaintiffs do not own, did not purchase, did not borrow money to purchase." *Id.*, p. 21. Finally, Plaintiffs respond that their Verified Complaint indeed states a claim for relief such that the instant Motion should be denied. *Id.*, p. 21-23.

Defendant has filed a Reply. Docket No. 30. In its Reply, Defendant argues that Plaintiffs' Response does not adequately address the grounds of the instant Motion, nor does it articulate any legally sufficient basis that would allow their claims to stand. *Id.* Defendant additionally contends that Plaintiffs' Response relies in part on information and documents not contained in their Verified Complaint, which the Court does not consider on a 12(b)(6) Motion. *Id.* With regard to Plaintiffs' argument that Randy Warman has standing because he is the husband of Ann Warman, Defendant argues that there is "no rule of law that automatically grants vicarious constitutional standing to spouses of injured parties." *Id.*, p. 2.

As to Plaintiffs' argument addressing their Civil Conspiracy claim, Defendant contends that Plaintiffs' acknowledgment in their Response that, "In reality DCU has been victimized just as much as plaintiffs have," actually undermines the inference that Defendant shared a common

purpose with co-Defendants U Drive, LLC, Mathieu and Johnson.[2] *Id.* Defendant further argues that Plaintiffs have not alleged the existence of an underlying predicate tort allegedly committed pursuant to the "conspiracy," as is a required prerequisite since conspiracy, standing alone, is not actionable. *Id.*, p. 3.

Regarding Plaintiffs' Civil RICO claims, Defendant argues that Plaintiffs' Verified Complaint states no claim under 18 U.S.C. §1962(b) because it does not allege that Defendant had any proprietary interest or control over any enterprise. *Id.* Defendant further argues that, because Plaintiffs' claims under 18 U.S.C. §1962(b) must be dismissed, so must the separate claim for conspiracy under 18 U.S.C. §1962(d). *Id.* Finally, Defendant argues that Plaintiffs have failed to allege facts sufficient for a reasonable inference of predicate acts, Defendant's involvement in the acts, or continuity of racketeering activity, such that the Verified Complaint fails to state a plausible claim against Defendant under any section of RICO. *Id.*, p. 4.

As discussed above, pro se Plaintiffs filed their Verified Complaint essentially alleging that the co-Defendants in this action fraudulently used documents Plaintiffs had submitted to the co-Defendants under the false pretenses of securing a business loan to forge an automobile loan application in Ann Warman's name, to create a bogus Bill of Sale to her, and to secure an automobile loan which resulted in co-Defendants' receipt of a $25,000 check from Defendant, with which co-Defendants absconded, leaving Ann Warman to repay the $25,000 loan. Docket No. 1. Plaintiffs contend that Randy Warman called Defendant and told them there were issues concerning the loan, asked them not to disburse the check, and asked them not to send a check to

---

[2] Unless otherwise indicated, the term "co-Defendants" will be used to refer to Defendants U Drive, LLC, Jacques Mathieu, and Derrick Johnson, and not to Defendant Digital Federal Credit Union. The Court notes that none of the three co-Defendants has been served.

UDrive, but that Defendant sent the check to UDrive anyway, allowing the co-Defendants to cash the check and abscond with the money. *Id.* Plaintiffs' argue that the loan was obtained without Ann Warman's consent, and they aver that she saw a signed loan contract only after the check had been issued and she received in the mail the fraudulent Bill of Sale for the automobile she allegedly purchased. *Id.* Plaintiffs contend that Ann Warman has been repaying the $25,000 loan and the "force placed insurance for the automobile" in order to "keep her good credit rating," but argue that she can no longer afford to make the payments "while waiting for, and hoping that law enforcement will investigate and bring charges against the perpetrators for their criminal acts." *Id.* Plaintiffs contend that all Defendants "had a part in the tort of conspiracy to defraud the Plaintiffs, which encompassed theft by deception, theft by conversion, forgery, unjust enrichment"; that Defendants' "misconduct constitutes a civil violation of RICO"; and that the "acts and actions of defendants further, involve illegal transactions, in which communications took place via the internet, the telephone, and US Postal Service, resulting in wire and mail fraud." *Id.*

With regard to the factual allegations against Defendant, Plaintiffs allege that: (1) Ann Warman received a letter from Defendant dated January 28, 2013, inquiring about the title to the automobile and advising her that, per the loan agreement, she was required to have Defendant reflected as the first lien holder on the title; (2) Ann Warman explained to Defendant but they "offered no assistance"; (3) "at one time," Defendant had agreed that Ann Warman would not "be forced to have insurance for the automobile, since Plaintiffs cannot drive a car they do not have"; (4) "Plaintiffs believe that someone at [Defendant] must be in on the conspiracy, [since] there would be no other reason that [Defendant] would not check into whether or not Mrs.

5

Warman's complaints were legitimate; plus, [Defendant] did send a check to Mr. Mathieu, allowed a forged check to be cashed, and could easily have confirmed whether or not a car was truly involved in a transaction to Mrs. Warman"; (5) Defendant sent Ann Warman a "Final Notice" letter dated February 21, 2013, concerning the insurance that she did not have threatening her with "force placed insurance" that would cost her an extra $4,285 should she not immediately supply proof of insurance on a car she did not own or possess; (6) Defendant sent Ann Warman a letter dated March 1, 2013, complaining that she did not have it listed as first lien holder on the title and had not sent the title to it, and threatening that it would declare her in default of the loan if she did not comply within 30 days; (7) Ann Warman received the Certificate of Insurance issued on March 11, 2013, indicating that premium was $4,285 and the coverage period was from 12/22/2012 - 12/22/2013; (8) Defendant sent Ann Warman a letter dating June 6, 2013, stating that because she had never supplied it with proof of insurance, her payment for the car and insurance had increased to $880 per month; and (9) "after much pleading," Defendant lowered the payments but added the price of the insurance to the principal, thereby increasing the loan. *Id.*

Plaintiffs' assert that Defendant "joined as a co-conspirator when they failed to verify the application, and blindly accepted that the automobile was at Udrive's car lot"; "furthered into the conspiracy when they mailed a check to Udrive Mr. Mathieu, for a loan to Mrs. Warman without having ever contacted Mrs. Warman to verify that she had applied for a loan, or to question where they should mail a check to"; and "went even further when they allowed Johnson and Mathieu to cash the $25,000 check for an alleged loan to Mrs. Warman, without her signature, and without seeing/verifying evidence that Mrs. Warman had actually signed/endorsed the check,

6

since she lived in Tennessee and the dealership was in Georgia." *Id.* Plaintiffs further assert that Defendant worked with the co-Defendants "by causing a loan to Plaintiff Ann Warman, wherein the racketeering activity was related to fraud and related activity in connection with identification documents (§ 1028), and forcing her to pay an unlawful debt." *Id.* Plaintiffs contend that Defendant is "in violation of 18 U.S.C. § 1962(b), pursuant to: § 1341 (mail fraud); § 1344 (financial institution fraud); § 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity); § 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts)." *Id.*

Plaintiffs seek compensatory, exemplary, and punitive damages; delivery of the automobile which was the subject of the loan; a declaration that no further payments are owed on the vehicle; one year of insurance on the vehicle; "costs and disbursements"; treble damages; attorneys fees if they are able to secure counsel; and any other available relief that is fair and just. *Id.*

As noted, Defendant argues that: (1) Plaintiffs' Verified Complaint fails to state a claim against it upon which relief can be granted; (2) Plaintiffs Randy Warman and J. Varnie Barker lack standing to pursue any claims because they have not alleged an injury-in-fact; (3) Plaintiffs have failed to state their Civil Conspiracy and Civil RICO claims with the requisite particularity; and (4) Plaintiffs have failed to allege facts sufficient to recover under either theory. *Id.*

Turning first to the issue of standing, in order to satisfy the standing requirements set forth in Article III of the U.S. Constitution, Plaintiffs must establish that: (1) each of them suffered an actual or threatened injury due to the alleged illegal conduct; (2) the injury must be fairly traceable to the challenged action; and (3) there must be a substantial likelihood that the

relief requested will redress or prevent the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Grendell v. Ohio Supreme Ct.*, 252 F.3d 828, 832 (6th Cir. 2001). With regard to Plaintiff J. Varnie Barker, Plaintiffs' sole allegations concerning Mr. Barker are that he is a long time friend of Plaintiffs, who was looking to publish a book series with them, and that he discovered Mr. Johnson through an online search. *See* Docket No. 1. These facts do not allege that J. Varnie Barker suffered any specific injury-in-fact, nor do they address causation or redressibility. *Id.* In fact, as can be seen in the facts discussed above, there are simply no allegations proffered against Defendant concerning J. Varnie Barker. *Id.* Accordingly, J. Varnie Barker lacks standing to pursue these claims.

With regard to Randy Warman, Plaintiffs' specific allegations pertaining to him are that the three Plaintiffs were friends who wanted to secure a business loan to publish a book series and that Randy Warman contacted both the police department and Defendant after Ann Warman received the Bill of Sale. *Id.* Again, these facts do not allege that Randy Warman suffered any specific injury-in-fact, and do not address either causation or redressibility. Moreover, while Plaintiffs also essentially allege that Randy Warman suffered injury because he is the spouse of Ann Warman, and because Ann Warman has been paying the loan out of marital funds, Plaintiffs fail to cite any authority for the proposition that a spouse of an injured party has standing by virtue of the injury transferring to said spouse, and the Court is unaware of any such authority. Randy Warman, therefore, also lacks standing to pursue these claims.

Turning to Plaintiffs' Civil Conspiracy claim, as an initial matter, conspiracy is not a separate cause of action, but rather, imposes vicarious liability upon people other than those who allegedly committed the underlying tort; therefore, the presence of an underlying tort is a

8

requisite. *See, e.g., Beck v. Prupis*, 529 U.S. 494, 502 (2000). Establishing vicarious liability requires: (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) result in injury. *See, e.g., Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). Additionally, Civil Conspiracy claims must be plead with some degree of specificity; unsupported conclusory allegations are insufficient to state a claim. *Id.*

Plaintiffs Civil Conspiracy allegations against Defendant are simply that:

(1) "someone at [Defendant] must be in on the conspiracy, [since] there would be no other reason that [Defendant] would not check into whether or not Mrs. Warman's complaints were legitimate; plus, [Defendant] did send a check to Mr. Mathieu, allowed a forged check to be cashed, and could easily have confirmed whether or not a car was truly involved in a transaction to Mrs. Warman";

(2) Defendant "joined as a co-conspirator when they failed to verify the application, and blindly accepted that the automobile was at Udrive's car lot"; "furthered into the conspiracy when they mailed a check to Udrive Mr. Mathieu, for a loan to Mrs. Warman without having ever contacted Mrs. Warman to verify that she had applied for a loan, or to question where they should mail a check to"; and "went even further when they allowed Johnson and Mathieu to cash the $25,000 check for an alleged loan to Mrs. Warman, without her signature, and without seeing/verifying evidence that Mrs. Warman had actually signed/endorsed the check, since she lived in Tennessee and the dealership was in Georgia"; and

(3) Defendant worked with the co-Defendants "by causing a loan to Plaintiff Ann Warman, wherein the racketeering activity was related to fraud and related activity in connection with identification documents (§ 1028), and forcing her to pay an unlawful debt."

9

Docket No. 1.

Taken as true, these allegations fail to allege facts establishing a common design, the unlawful purpose of the conspiracy or unlawful means employed to carry it out, the identity of the alleged conspirators and the actions taken. Accordingly, Plaintiffs cannot sustain their Civil Conspiracy claim.

Regarding Plaintiffs' Civil RICO claims against Defendant, Plaintiffs conclusorily contend that Defendant is "in violation of 18 U.S.C. § 1962(b), pursuant to: § 1341 (mail fraud); § 1344 (financial institution fraud); § 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity); § 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts)." Docket No. 1.[3]

18 U.S.C. § 1962(b) states:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Plaintiffs aver that Defendant violated RICO by simply "causing a loan." Docket No. 1. The allegations of Plaintiffs' Verified Complaint do not establish that Defendant engaged in a pattern of racketeering activity; or that Defendant had any interest in, or control over, any enterprise; or that Defendant participated in the alleged conduct of the co-Defendants. *See id.* Additionally, Plaintiffs' Civil RICO allegations against Defendant are conclusory; Plaintiffs

---

[3] Plaintiffs contend that the co-Defendants violated 18 U.S.C. § 1962(c). *See* Docket No. 1. Because the instant Motion is brought solely by Defendant Digital Federal Credit Union, the undersigned will not address Plaintiffs' 18 U.S.C. § 1962(c) allegations against the co-Defendants.

proffer no specific factual allegations concerning this claim against Defendant. *Id.* Moreover, Plaintiffs' conclusory statements fail to establish the alleged underlying predicate offenses of mail fraud, wire fraud, or financial institutions fraud, as claims of fraud must be plead with particularity. *See* Fed. R. Civ. P. 9(b). Accordingly, Plaintiffs cannot sustain their Civil RICO claim.[4]

For the reasons set forth above, Plaintiffs have failed to state a claim upon which relief can be granted. The undersigned therefore recommends that the instant Motion to Dismiss (Docket No. 18) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. Clifton Knowles
United States Magistrate Judge

---

[4] While not entirely clear, to the extent that Plaintiffs' may intend to raise a claim under 18 U.S.C. § 1962(d), that claim must likewise fail because a claim for conspiracy to violate 18 U.S.C. § 1962(a), (b), or (c) cannot stand without a violation of one of those sections. *See Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 495 (6th Cir. 1990).